Brett N. Taylor (SBN 274400)
btaylor@cozen.com
COZEN O'CONNOR
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Telephone: (213) 892-7900
Facsimile: (213) 892-7999

Paul Leary (PA Bar No. 85402)
(To Apply *Pro Hac Vice*)
pleary@cozen.com
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2000
Facsimile: (215) 665-2013

Attorneys for Plaintiff
NATIONAL HOT ROD ASSOCIATION

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL HOT ROD ASSOCIATION, a California Nonprofit Mutual Benefit Corporation,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>THE COCA COLA COMPANY, a Delaware Corporation,<br><br>　　　　Defendant. | Case No.<br><br>**NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL** |

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

## **COMPLAINT AND JURY DEMAND**

Plaintiff National Hot Rod Association, a California non-profit corporation ("NHRA"), by and through its counsel, files this Complaint against Defendant The Coca-Cola Company ("Coca-Cola" or "the Company") and states as follows:

## **NATURE OF THE ACTION**

1.      In August 2017, NHRA and Coca-Cola announced a six-year extension of Coca-Cola's sponsorship of NHRA's professional drag racing series, continuing a partnership that began in 2002.  In an August 2017 email, Coca-Cola said:  "Lastly, I know I speak for everybody from The Coca-Cola Company, when I say just how excited we are about extending this partnership.  It has been a terrific partnership with individuals that make it truly enjoyable and I only foresee great things as we look ahead to the future."Just two years later, in 2019, Coca-Cola changed its business strategy and told NHRA that it wanted to get out of that deal.  Though it desired an early exit, Coca-Cola knew and acknowledged that there were over four years remaining under the Agreement, and that Coca-Cola was bound until the end of the term.  Coca-Cola did not and could not claim any breach by NHRA.

2.      Now, Coca-Cola has seized on global tragedy, the COVID-19 pandemic, as a pretext to claim a "breach" and "terminate" the sponsorship agreement early to save money.  But neither the Agreement nor the law allows Coca-Cola to do so.  This action seeks to hold Coca-Cola to its contractual promises.

3.      NHRA is a drag-racing sanctioning body.  NHRA's mission is to preserve and promote the sport of drag racing, and improve safety in the sport. NHRA makes rules for the sport, conducts and facilitates drag racing events throughout the country, publishes a magazine and a website, produces television programs featuring the sport, promotes safety and youth activities in the sport, and otherwise engages in activities in support of its mission.

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

LEGAL\48389523\2

4.      NHRA and Coca-Cola have been business partners for 19 years. Beginning in 2002, Coca-Cola obtained the series sponsorship to NHRA's premiere professional racing series, additional exclusive rights at certain NHRA events, and myriad additional sponsorship benefits.

5.      Consistent with their long-term relationship, effective January 1, 2018, NHRA and Coca-Cola extended their contractual relationship through 2023 in a $34,320,000 Sponsorship Agreement (the "Agreement") for the NHRA Mello Yello Drag Racing Series.  Mello Yello is a Coca-Cola brand.

6.      The Agreement has a six-year term and Coca-Cola agreed to pay NHRA $5,720,000 per year.  In return, NHRA provided Coca-Cola with sponsorship rights, including but not limited to, name entitlements, certain exclusivities, television benefits and much more.

7.      In September 2019, during the second year of the 6-year Agreement and the eighteenth year of the partnership, Coca-Cola told NHRA that it would not renew its sponsorship when the Agreement expired at the end of 2023, because of a change in Coca-Cola's business strategy.  Nonetheless Coca-Cola knew and acknowledged that the Agreement was valid and binding through its stated expiration at the end of 2023.

8.      In early 2020, the COVID 19 pandemic brought most of the country to a standstill.  As a result, NHRA, like virtually every other sports sanctioning body in the United States, was forced to cancel and postpone certain events.  NHRA made its decisions after consultation with health experts and public officials, among others.  As of July 2020, Coca-Cola applauded NHRA's efforts and recognized that nonetheless, the Agreement was in full force and effect.

9.      As NHRA continued to take action to reasonably and safely navigate the unprecedented COVID-19 global pandemic, Coca-Cola saw an opportunity. Coca-Cola decided it would use the pandemic as a pretext to immediately "release

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

3

its obligations" under the Agreement and leave NHRA without the funds promised for the Mello Yello Drag Racing Series, which NHRA managed to continue during the pandemic. Coca-Cola makes the incredible claim that by consulting with health experts and public officials regarding how best to protect public health, NHRA committed a material breach of its obligations under the Agreement.

10.    Consistent with its strategy to use the pandemic to avoid its contractual obligations, Coca-Cola improperly withheld the $2.86 million payment that was due to NHRA on May 15, 2020.  Then, in September 2020, Coca-Cola unilaterally declared the Agreement to be "terminated."  Coca-Cola's failure to make payment under the Agreement and attempt to unilaterally terminate the Agreement is wholly unjustified under the Agreement and the law.  Coca-Cola's actions constitute a material breach of the Agreement, which has resulted in substantial damages to NHRA.

11.    This action seeks to hold Coca-Cola responsible for its material breaches of the Agreement and to prevent Coca-Cola's unilateral exit from a valid and binding Agreement, under cover of a global tragedy.

## **THE PARTIES**

12.    Plaintiff NHRA is a California non-profit corporation with its principal place of business in Los Angeles County, California.  NHRA organizes and conducts, among other events and activities, the NHRA Mello Yello Drag Racing Series, which is the premier national series in professional drag racing.

13.    Defendant Coca-Cola is a corporation organized and existing under the laws of Delaware with its principal place of business in Atlanta, Georgia. Coca-Cola markets, distributes, offers for sale, and sells its products throughout the United States, including in this District, through its online store and widely through other establishments located in this District.

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

4

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

**JURISDICTION AND VENUE**

14.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.  Complete diversity of citizenship exists because Plaintiff is a citizen of California and Defendant is a citizen of Delaware and Georgia.

15.    This Court has personal jurisdiction over Defendant because the Agreement was negotiated in this State and District and a substantial part of the performance and breach of the Agreement occurred and continues to occur in this State and District.  During the course of the Agreement, Coca-Cola repeatedly contacted NHRA's headquarters in this State and District and participated in frequent and regular meetings and other communications to facilitate the performance of the Agreement.  Defendant also has traveled repeatedly to this State and District in connection with the Agreement, sponsors drag racing and other events in this State and District, and is registered to and systematically and continuously does conduct business in this State and District.

16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims has occurred and continues to occur in this District.

**THE FACTS**

17.    Founded in 1951, NHRA is the premier sanctioning body for drag racing in the United States and the largest auto racing organization in the world.

18.    Founded in 1886, Coca-Cola purports to be the leading beverage provider in the world and has expanded its portfolio to provide over 500 brands of beverages in over 200 different countries around the world.  Coca-Cola's website boasts that Coca-Cola products are consumed approximately 1.7 billion times every

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

day.  Coca-Cola is a public company with a market capitalization of over $200 billion.

19.     Coca-Cola is renowned for its sports sponsorships, proclaiming on its website, "Can a Company be considered the world's biggest sports fan?" Such sponsorship includes the Olympic Games since 1932, the FIFA World Cup beginning in 1976, and NHRA's professional drag racing series beginning in 2002.

20.     Since 2002, NHRA and Coca-Cola maintained and enjoyed a successful sponsorship relationship, the performance of which is largely centered in California.  Throughout the course of the Agreement, Coca-Cola contacted NHRA's headquarters in Glendora, California and NHRA's California based employees, on a frequent basis – sometimes as often as daily or weekly – in furtherance of its performance of the Agreement.  Each year, Coca-Cola employees traveled to California to attend race events and present awards and otherwise participate in the annual NHRA Mello Yello Drag Racing Series Awards ceremony, which is sponsored by Coca-Cola.  Coca-Cola employees also attended NHRA's yearly Sponsor Summit in California.

21.     Before January 2018, the parties had entered into four separate and contiguous sponsorship agreements for entitlement to the NHRA professional drag racing series.

**THE AGREEMENT**

22.     Effective January 1, 2018, NHRA and Coca-Cola renewed their sponsorship relationship and entered into a six-year Agreement, which extended from 2018 through 2023.  Pursuant to the Agreement, Coca-Cola was the "exclusive worldwide Beverage Sponsor of NHRA during the term." (Agreement, § 4.2).

23.     The Mello Yello Drag Racing Series is the NHRA's preeminent event series, with races happening all over the country, traditionally including the season

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

opener and season finals at NHRA's own Auto Club Raceway in Pomona, California.

24.     Pursuant to the Sponsorship Agreement, NHRA is obligated to provide Coca-Cola with, *inter alia*:

a.     **Name Entitlement**.  The Agreement provides that NHRA's professional drag racing series shall be called "**NHRA Mello Yello Drag Racing Series"**, or such other name as is mutually agreed upon by the parties.(Agreement, § 4.1.1).

b.     **Official Designations.**     Under the Agreement, Coca-Cola is granted authority to designate up to four (4) categories of Coca-Cola Beverages as the "Official [Beverage category] of NHRA", and shall be permitted to designate itself as an "Official Sponsor of NHRA," as well as the "Official Fan Refreshment of NHRA."  (Agreement, § 4.1.2).

c.     **Entitlement of Prize Fund and Top Ten Awards.**  Under the Agreement, Coca-Cola brands must be used in the name of the year end prize fund, and the "Top Ten Awards" for each professional category at all national events in the Mello Yello series.  Specifically, "[t]he awards shall be known as the "NHRA Mello Yello Top 10" or the "NHRA [BRAND] Top 10", as applicable, and the season-end winners will be known as the "NHRA Mello Yello Champions" or "NHRA [BRAND] Champions, or such other mutually agreed-upon names." (Agreement, § 4.1.3).

d.     **Entitlement of Annual Awards Ceremony.**  The season-ending awards ceremony for the Mello Yello series shall be entitled the "NHRA [BRAND] Drag Racing Series Awards Ceremony." (Agreement, § 4.1.4).

e.     **Entitlement to one NHRA National Event and Special Broadcast Features.**The Agreement provides that Coca-Cola will be entitled to one NHRA National Event among other special broadcast features. (Agreement, § 4.1.6).

(Agreement, §§ 4.1.1-4.1.4, 4.1.6)

Cozen O'Connor
1299 Ocean Avenue, Suite 900
Santa Monica, CA 90401

7

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

25.     In exchange for these benefits, Coca-Cola is contractually obligated to pay NHRA $34,320,000 over the six-year term of the Agreement.  The fees for each year of the Agreement total $5,720,000 payable in two equal installments of $2,860,000 due on November 15th of the preceding year and May 15th of the then-current year of the Agreement.  (Agreement, § 9).  All payments are directed to NHRA's headquarters in Glendora, California. Pursuant to the Agreement, each year of the Agreement is referred to as an "Agreement Year."

26.     Section 13.1.2 of the Agreement provides for a refund of fees in two instances:

> (a)     Less than 22 National Events take place during any Agreement Year (in which case [Coca-Cola] shall be entitled to a pro-rata refund of the Fees for that Agreement Year, to be determined based on fifty percent (50%) of the Fees for the applicable Agreement Year, divided by 22 and multiplied by the number of National Events which did not take place); or

> (b)     Any of [Coca-Cola's] rights under this Agreement is limited, such as (for example only) breach of [Coca-Cola's] exclusivity.  In such event, Company will negotiate in good faith for an appropriate reduction of the Fees.  This reduction must fairly reflect the decrease in the value of [Coca-Cola's] rights.  If NHRA and [Coca-Cola] have not agreed on the amount of this reduction within 30 days of written notice by [Coca-Cola], then [Coca-Cola] may submit the matter to binding arbitration (including the right to request and be granted termination as a remedy) or the parties may agree on another alternative dispute resolution method.

(Agreement, §13.1.2 (a-b)).

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

## NHRA'S PERFORMANCE UNDER THE AGREEMENT

27.     In 2018, the first year of the extended Agreement, NHRA hosted twenty-four (24) Mello Yello events around the country between February 8, 2018 and November 8, 2018.

28.     For 2018, Coca-Cola timely made two payments of $2,860,000.

29.     In 2019, the second year of the extended Agreement, NHRA hosted twenty-four (24) Mello Yello events around the country between February 7, 2019 and November 14, 2019.

30.     For 2019, Coca-Cola timely made two payments of $2,860,000.

31.     In September of 2019, Coca-Cola informed NHRA that it had decided not to extend its sponsorship past the expiration of the Agreement at the end of 2023.

32.     Coca-Cola then offered to allow NHRA to enter into discussions with other potential sponsors to take over the rights outlined in the Agreement, and agreed such discussions would not constitute a breach of the "Right of First Negotiation for Future Term" as provided in Section 2 of the Agreement.

33.     Coca-Cola also informed NHRA that it "is amenable to an early termination of our agreement in the event that your new sponsor desires to begin its sponsorship prior to December 31, 2023."

34.     Coca-Cola offered a changing business strategy as the explanation for its decision not to renew the nearly twenty-year contractual relationship between the parties.  Regardless of its reasons for moving on after the expiration of the Agreement, however, Coca-Cola recognized that it remained bound by the terms of the Agreement through 2023.

35.     In November 2019, Coca-Cola paid $2,860,000, the first half of the fee due for 2020.  As the 2020 racing season began, NHRA continued to perform its obligations under the Agreement and hosted two Mello Yello racing events – the

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

February 6-9, 2020 Lucas Oil NHRA Winter Nationals in Pomona, California and the February 21-23, 2020 NHRA Arizona Nationals near Phoenix, Arizona.

36.     The next scheduled event, the March 12-15 Amalie Motor Oil NHRA Nationals in Gainesville, Florida was just underway when pandemic conditions forced NHRA to postpone the event.  Unfortunately, in light of the spreading COVID-19 pandemic, beginning in March 2020, like all other sporting leagues, NHRA was forced to amend its schedule, as the nature of NHRA events could have posed a substantial threat of virus transmission.

37.     As the majority of the country went into quarantine, there were cancellations or postponements of one Mello Yello event in March, three Mello Yello events in April, and one Mello Yello event scheduled for early May.

38.     Yet, despite unprecedented conditions posed by the global pandemic, NHRA performed its obligations to the fullest extent possible while considering public health and safety.  As is well evidenced by the Agreement itself as well as the parties' long course of dealing, there is much more to the sponsorship than in-person events, including substantial television rights, as well as prominent sponsorship recognition and value that is provided 24 hours a day, 7 days a week, 365 days of the year.  NHRA continued to provide the many benefits due Coca-Cola that were unrelated to live events, and the parties worked closely together to ensure that Coca-Cola received additional and alternative benefits during times that the pandemic limited in-person events.

39.     NHRA worked diligently to return to racing within public health guidelines.  Specifically, NHRA recently hosted and provided four Mello Yello national events in Indiana on July 11-12, 18-19, August 6-9, including, most recently, the DENSO Spark Plus NHRA U.S. Nationals on September 3-6, 2020.

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

## COCA-COLA'S MATERIAL BREACH OF THE AGREEMENT

40.     In May 2020, Coca-Cola failed to perform its obligations under the Agreement by, among other things, withholding the $2,860,000 fee it was required to pay NHRA on or before May 15, 2020.

41.     Under the Agreement, Coca-Cola's "failure to pay any undisputed Fees due hereunder" constitutes a "Material Breach" of the Agreement.  (Agreement, §13.2.1).

42.     Despite Coca-Cola's failure to pay monies due to NHRA in violation of the Agreement, on June 24, 2020, NHRA's President offered a $250,000 credit against the withheld  fee, and a promise to deliver additional value in 2021 to make up for additional changes that may arise in 2020.

43.     A month later, on July 22, 2020, Coca-Cola wrote the following regarding the parties' ongoing contractual relationship:

> While the impacts of Covid-19 are unique for each property, as a Company we have internally aligned on certain principles that will guide how we work together to address these impacts.  Specifically, we will not ask for any money back for 2020.  Instead, we will hold future payments or reconcile against future payments in order to recover lost value.  Additionally, we are not looking for or are able to accept makegoods to compensate for lost value.
>
> We appreciate everything that you and the entire NHRA team are doing to manage through the unique challenges to your business brought on by this pandemic and are confident that the decisions you are making are in the best interest of the NHRA.  Similarly, we too are trying to manage our business during these unprecedented times which includes having these tough conversations because it's the right thing to do.

44.     To that effect, Coca-Cola proposed fee reductions of $520,000 for value lost as a result of canceled and postponed races and a further reduction of

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

$293,636.  Coca-Cola also sought to reduce the additional money it agreed to spend to promote NHRA outside of the fees due under the Agreement – known as its activation commitment – from $2,000,000 to $1,000,000 for 2020.  Coca-Cola still had not paid its May 15, 2020 fee of $2,860,000, which is due under the Agreement regardless of whether any refund to Coca-Cola was agreed upon.

45.     On August 5, 2020, Cameron Tyer, Group Director, Business Affairs & Agency Management for Coca-Cola told Peter Clifford, NHRA's Chief Executive Officer, that Coca-Cola intended to walk away from its Agreement with NHRA.

46.     In response, Mr. Clifford sent a letter to Ms. Tyer on August 6, 2020. In his letter, Mr. Clifford reminded Ms. Tyer that Coca-Cola had previously indicated "it would allow our agreement to expire at the end of 2023 and that if NHRA could find a replacement [Coca-Cola] preferred to exit sooner.  Now, it appears that you are trying to seize on the pandemic to justify a unilateral early exit."

47.     Mr. Clifford also noted, "[w]e would expect a company with [Coca Cola's] values to wholeheartedly support NHRA's actions to protect people in response to the pandemic, such as cancelling or postponing events based on government and public health guidance and the safety of our racing community. We are shocked that you are now trying to cast our responsible and necessary actions as a 'breach' and to use the pandemic to turn an 18-year relationship (with three more contracted years) upside-down."

48.     A week later, on August 12, 2020, Coca-Cola sent NHRA a perfunctory "NOTICE OF MATERIAL BREACH of Sponsorship Agreement," addressed to NHRA President Glen Cromwell at the NHRA headquarters in Glendora, California.  Coca-Cola's "NOTICE" was designed to support a wholly unjustified termination of the Agreement.

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

12

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

**49.**     Coca-Cola's attempt to terminate the Agreement is without any justification under the Agreement or the law.  Coca-Cola's unilateral declaration that it is absolved of its obligations under the Agreement constitutes a material breach of the Agreement and provides no basis for Coca-Cola to avoid its contractual obligations to NHRA.

**COCA-COLA'S PURPORTED NOTICE OF TERMINATION**

50.     The Agreement defines Coca-Cola's Rights and Obligations in Section 13.1.1:

> **Notice and Opportunity to Cure; Termination.** Company shall give NHRA prompt written notice of any alleged Material Breach as defined below under this Agreement and Company may terminate this Agreement if within ten (10) days after receipt of such notice, NHRA has not taken reasonable action likely to effect correction of the alleged breach within a reasonable time, or if within thirty (30) days after receipt of such notice, NHRA has not corrected the alleged breach.  If Company so elects to terminate, Company shall be entitled, upon such termination, to a pro rata refund of the Fees paid to NHRA pursuant to Section 9.  "Material Breach" shall mean:
>
> > (a)     The expiration or revocation of NHRA's authority to convey the rights set forth herein; or
> >
> > (b)     NHRA's failure to provide Company with a material and substantial portion of any material right or benefit described herein.

51.     In its Notice of Material Breach letter, Coca-Cola invoked three grounds for its purported termination of the Agreement, each of which is addressed below.  None of Coca-Cola's purported justifications is legitimate.

52.     *First*, Coca-Cola alleges that NHRA has materially breached its Agreement by its failure to provide Coca-Cola with a material and substantial portion of the Company's sponsorship benefits primarily due to (a) race

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

cancellations or postponements, and (b) the purported loss or revocation of its authority to provide the sponsorship benefits.

53.     Coca-Cola's support for this position purportedly arises from the cancellation of 9 events across the country and changing 9 events from three-day events to two-day events.

54.     Coca-Cola claims that because the events have not occurred, it has suffered "[a] repeated and cumulative loss of sponsorship benefits."

55.     At present, NHRA has five (5) additional racing events planned for the remainder of the 2020 calendar year:  (1) the Amalie Motor Oil NHRA Gatornationals on September 25-27, 2020; (2) the Mopar Express Lanes NHRA Midwest Nationals on October 2-4, 2020; (3) the AAA Texas NHRA FallNationals on October 16-18, 2020; (4) the Mopar Express Lane NHRA SpringNationals Presented by Pennzoil on October 23-25, 2020; and (5) the Dodge NHRA Nationals Presented by Pennzoil on October 30-November 1, 2020.

56.     Thus, in spite of the unprecedented impact of the COVID-19 pandemic across the country, NHRA continues to perform under the Agreement, to deliver Coca-Cola's brand exposure, provide myriad other benefits under the Agreement, including television, and even to deliver live events, albeit fewer than originally planned, during the pandemic.

57.     Holding fewer live events is not a breach.  The Agreement specifically addresses situations where there may be a reduction in races and provides Coca-Cola with a contractual right to seek a refund when scheduled races do not occur in a given year.  *See* Agreement § 13.1.2 ("[Coca-Cola] may seek an appropriate reduction in the Fees if: (a) Less than 22 National Events take place during any Agreement Year (in which case [Coca-Cola] shall be entitled to a pro-rata refund of the Fees for that Agreement Year, to be determined based on fifty percent (50%) of

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

14

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

1  the Fees for the applicable Agreement Year, divided by 22 and multiplied by the

2  number of National Events which did not take place.").

3      58.     Accordingly, NHRA's inability to host a full slate of races in a given

4  year is not a violation of the Agreement.  It simply permits Coca-Cola to seek a pro-

5  rata refund at the end of the year to account for any races that did not occur.

6      59.     *Second*, in support of its purported termination notice, Coca-Cola

7  claimed that NHRA "lost or revoked" its authority to provide sponsorship benefits

8  to Coca-Cola pursuant to Section 13.1.1(a).  To support this argument, Coca-Cola

9  absurdly claims that NHRA's consultation with "track representatives, health

10 officials, and government authorities" in its decision to cancel the 40th Annual

11 Southern Nationals (due to COVID-19) is indicative of a "loss of authority to

12 convey rights and benefits in the Agreement."

13     60.     This argument is equally without merit and similarly reeks of bad faith.

14 NHRA's consultation with health experts and local officials to address public safety

15 is not indicative of an abdication of authority.  To the contrary, such decision-

16 making evidences NHRA's continuing authority to host racing events in a manner

17 that contemplates the best interests of all involved.  This is an example of NHRA's

18 reasonable and informed exercise of authority that rests exclusively with the NHRA,

19 not a "loss of authority."

20     61.     *Third*, Coca-Cola sought to exploit and rewrite the Agreement's force

21 majeure provision contained in Section 22 of the Agreement, claiming that NHRA's

22 purported breach of the Agreement is not excused by the COVID-19 pandemic.

23 NHRA has not breached the Agreement.  But, in any event, any lack of performance

24 would undeniably be excused by the Agreement's force majeure provision.

25     62.     The Agreement's force majeure provision states:

26         Neither party shall be liable for any failure, inability or
           delay to perform its obligations hereunder if such failure,
27         inability or delay arises from unforeseen or unpreventable

28

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

circumstances beyond the reasonable control or without fault of the offending party. By way of example and not limitation, such causes may include acts of war, terrorism, riots, sabotage, explosion, fire or strike, rendering performance commercially impractical. In the event of such failure, NHRA or Company, as the case may be, shall use its best efforts to cure such causes, to minimize its effect on the other party and to promptly resume performance of its obligations hereunder. **In the event that the failure, inability or delay of performance continues for a contiguous period of 180 calendar days, the parties shall be released of their obligations and the Fees shall be prorated to the date of release.**

(Agreement, § 22, emphasis added).

63.    To be clear, NHRA has performed its obligations under the Agreement. Never has there been an inability or delay of performance by NHRA, let alone for a contiguous period of 180 calendar days.

64.    Indeed, Coca-Cola ignores the fact that NHRA continues to perform under the Agreement.  NHRA held three separate Mello Yello race events in the weeks before Coca-Cola served its purported Termination Notice, and Coca-Cola received its benefits in each and every one.Moreover, NHRA continued to provide benefits unrelated to live events and the parties worked closely together to provide Coca-Cola with additional and alternative benefits during times that the pandemic limited in-person events.

65.    Coca-Cola ignores the benefits it received and the fact that NHRA recently hosted and provided four Mello Yello national events in Indiana on July 11-12, 18-19, August 6-9, and most recently, the DENSO Spark Plus NHRA U.S. Nationals on September 3-6, 2020.

66.    All four Indiana races were televised.  Portions of all four races appeared on the Fox broadcast network as well as on Fox Sports 1. Thus, despite the pandemic and nationwide moratorium on almost all sporting events, during 2020

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

1  NHRA was able to provide nearly 200 hours of television airtime for the Mello

2  Yello Series, with multiple millions of viewers.

3      67.    Despite being aware of these live events and NHRA's continued

4  performance under the Agreement, Coca-Cola failed to honor its contractual

5  obligations and now seeks to walk away from its future obligations under the

6  Agreement, including payment of applicable fees for half of 2020 and all of 2021,

7  2022 and 2023.

8      68.    On September 1, 2020, Coca-Cola sent NHRA a specious "NOTICE

9  OF TERMINATION of Sponsorship Agreement," again addressed to NHRA

10  President Glen Cromwell at the NHRA headquarters in Glendora, California.

11      69.    Coca-Cola has breached the Agreement by failing to pay its May 15,

12  2020 fee of $2,860,000 and it is now clear that Coca-Cola is attempting, improperly,

13  to capitalize on a global tragedy to achieve a unilateral exit from the Agreement and

14  not pay over $20 million remaining due.  In September, 2019, long before the

15  pandemic arrived, Coca-Cola announced that it wanted to end the Agreement as

16  soon as possible, but recognized that it had no basis to do so.  Incredibly, Coca-Cola

17  now offers the pandemic as a pretext to achieve its desired business result and avoid

18  its existing and future payment obligations.

19  **FIRST COUNT**

20  **(BREACH OF CONTRACT)**

21      70.    NHRA re-alleges and incorporates by reference each of the foregoing

22  paragraphs, as though fully set forth herein.

23      71.    In August 2017, NHRA and Coca-Cola executed the Agreement,

24  effective January 1, 2018.

25      72.    The Agreement, at all times relevant to this action, is a legal, valid and

26  binding contract between NHRA and Coca-Cola.

27

28

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

17

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

73.     Implied in the Agreement is a covenant of good faith and fair dealing, which obligates the contracting parties to act in good faith, to use their best efforts to deal fairly with each other, and to avoid impeding the other from obtaining the benefits of the Agreement.

74.     NHRA has performed all material conditions, covenants, and promises that it was not excused from performing, in accordance with the terms and conditions of the Agreement.

75.     Coca-Cola's performance of its obligations has not been excused.

76.     The Agreement explicitly provides that Coca-Cola is in material breach when there is a "failure to timely pay any undisputed Fees due hereunder." (Agreement, § 13.2.1).

77.     The Agreement also explicitly provides that Coca-Cola is in material breach when there is a "failure to provide NHRA with a material and substantial portion of any material right or benefit described herein." (Agreement, § 13.2.3).

78.     Coca-Cola has materially breached its obligations under the Agreement, including by, *inter alia*, refusing to comply with its obligations under the Agreement; failing to pay its May 15, 2020 fee of $2,860,000 as required; anticipatorily repudiating its obligations for its November 15, 2020 fee of $2,860,000 and all other future fees due under the Agreement; and failing to comply with the contractual provisions dictating the circumstances under which the Agreement may be terminated.

79.     Further, in utilizing the COVID-19 pandemic to justify its failure to pay monies due to NHRA and stripping NHRA of the benefit of the bargain, Coca-Cola has also breached the implied covenant of good faith and fair dealing imposed on every contract governed by Georgia law.  Coca-Cola's position – that NHRA was wrong to take public health into account – is in bad faith and against public policy.

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

80.    Coca-Cola also has violated the terms of the Agreement and the implied covenant of good faith and fair dealing by unilaterally withholding the May 15, 2020 fee and refusing to negotiate any applicable refund in good faith and in light of the circumstances, as required by Section 13.1.2(b) and Section 4 of the Agreement.  Instead of paying NHRA and attempting to negotiate a refund in good faith, Coca-Cola unilaterally withheld payment, refused to engage in any good faith negotiations, and, without justification, served a bad faith termination notice purporting to terminate the Agreement and deny NHRA all of the benefits of the bargain.

81.    As a direct and proximate cause of Coca-Cola's breach of the Agreement as alleged herein, NHRA is entitled to recover its contractual damages, including, but not limited to, all payments that Coca-Cola has already withheld and any future payments that Coca-Cola misses as a result of its invalid and improper unilateral attempt to terminate the Agreement.

## SECOND COUNT

## (DECLARATORY AND INJUNCTIVE RELIEF)

82.    NHRA re-alleges and incorporates by reference each of the foregoing paragraphs, as though fully set forth herein.

83.    The Agreement, at all times relevant to this action, is a legal, valid and binding contract between NHRA and Coca-Cola.

84.    NHRA has performed all material conditions, covenants, and promises required to be performed by it to the best of its ability in accordance with the terms and conditions of the Agreement.

85.    NHRA has not breached the Agreement.

86.    NHRA's cancellation and postponement of certain racing events due to the COVID-19 pandemic was entirely appropriate and is contemplated by the

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

1  Agreement's consideration of a pro rata refund in the event that less than 22 racing

2  events occur.

3       87.     There is no basis in fact or law to allege that NHRA has failed to

4  perform its obligations in a manner which amounts to a material breach pursuant to

5  the Agreement.

6       88.     Thus, Coca-Cola's performance of its obligations has not been excused

7  and the Agreement may not be terminated by Coca-Cola.

8       89.     Accordingly, NHRA seeks a declaratory judgment directing that the

9  Agreement remains in full force and effect and that Coca-Cola is not relieved of its

10  obligations to perform under the Agreement, including, but not limited to, its

11  payment obligations. NHRA also seeks injuctive relief to ensure that Coca-Cola

12  refrains from taking any action in furtherance of its purported termination of the

13  Agreement and to continue to perform its contractual obligations.

## **PRAYER FOR RELIEF**

15  WHEREFORE, NHRA respectfully prays for the following relief:

16       A.     That judgment be entered in favor of NHRA and against Coca-Cola;

17       B.     That NHRA be awarded all damages available under the Agreement;

18       C.     That NHRA be awarded any reasonable attorneys' fees, costs, or other

19  expenses recoverable, including those recoverable pursuant to the Agreement;

20       D.     That NHRA be awarded interest thereon at the applicable rate under the

21  Agreement;

22       E.     That this Court issue a declaratory judgment that, the Agreement is in

23  full force and effect and is not terminated for breach or force majeure and that Coca-

24  Cola is not relieved of its payment obligations;

25       F.     That this Court enter a preliminary and permanent injunction, as

26  applicable, directing Coca-Cola to refrain from taking any action in furtherance of

27

28

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2

1  its purported termination of the Agreement and to continue to perform its contractual

2  obligations; and

3     G.     That NHRA be granted such other and further relief as the Court may

4  deem just and proper.

5                          **DEMAND FOR JURY TRIAL**

6     Plaintiff National Hot Rod Association hereby demands a trial by jury of all

7  issues so triable.

8     Dated: September 21, 2020        Respectfully submitted,

9

10                                     _/s/ Brett N. Taylor_____
11                                     Brett N. Taylor (SBN 274400)
                                       btaylor@cozen.com
12                                     COZEN O'CONNOR
13                                     601 S. Figueroa Street, Suite 3700
                                       Los Angeles, CA  90017
14                                     Paul K. Leary, Jr. (pro hac forthcoming)
15                                     Thomas M. O'Rourke (pro hac forthcoming)
                                       Benjamin I. Wilkoff (pro hac forthcoming)
16                                     COZEN CONNOR P.C.
17                                     One Liberty Place
                                       1650 Market Street
18                                     Suite 2800
19                                     Philadelphia, PA  19103

20

21

22

23

24

25

26

27

28

COZEN O'CONNOR
1299 OCEAN AVENUE, SUITE 900
SANTA MONICA, CA 90401

NATIONAL HOTROD ASSOCIATION'S COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

LEGAL\48389523\2